## APPEAL OF POTTER FARMS, INC.

Docket No. 5928.    Promulgated February 10, 1927.

1. On the evidence, *held*, that the sale of real property made in 1920 was not on the installment plan; that sales made in 1921 were on the installment plan.

2. Reductions in depreciation and invested capital approved for lack of evidence.

*Frederic G. Bastian, Esq.*, for the petitioner.
*Ward Loveless, Esq.*, for the Commissioner.

This is an appeal from the determination of a deficiency in income and profits taxes for 1920 and 1921, in the amount of $5,025.64. The deficiency arises from reduction of invested capital, disallowance of depreciation claimed by taxpayer, and the inclusion of negotiable promissory notes received by the taxpayer upon the sale of land in the computation of the gain or profit realized by the sale.

### FINDINGS OF FACT.

The taxpayer is a corporation organized in 1916 under the laws of Virginia, with an office in New York City. It was incorporated under the name of Norfolk Southern Farms, Inc., but on June 3, 1918, its name was changed to Potter Farms, Inc.

The taxpayer, the Potter Store, Inc., and Norfolk Southern Drainage Corporation were affiliated corporations during 1920 and 1921, and consolidated returns were filed showing no tax due.

During the year 1916, the taxpayer purchased 45,565 acres of woodland in North Carolina which had to be cleared and drained preparatory to its use as farm land. During the years 1917 to 1921, inclusive, the taxpayer was engaged in the development and sale of the acreage above mentioned. Potter Store, Inc., one of its subsidiaries, operated a general store on the tract during the said period. Norfolk Southern Drainage Corporation, its other subsidiary, during said period did certain development work on the tract, consisting of the construction of drainage ditches. The said tract is located in one of the drainage districts created under the drainage law of North Carolina, known as the Albemarle Drainage District. Drainage bonds were issued and sold to defray the cost of drainage and taxes were assessed against the land within the drainage district to pay the drainage bonds. These assessments constitute a lien subject only to state and county taxes.

A sale of 160 acres was made in 1920, for a total purchase price of $8,800. A cash payment of $2,400 was received by the taxpayer. The remaining $6,400 was secured by five equal purchase-money notes maturing in successive years, bearing interest at the rate of 6 per cent. In 1921 two sales were made of 640 acres each. The purchase price of one of the sales was $36,800. A cash payment of $6,400 was received by the taxpayer. The remaining $30,400 was deferred and was secured by five equal purchase-money notes maturing in each successive year with interest at 6 per cent. The purchase price of the second sale was $33,600. A cash payment of $6,400 was received by the taxpayer. The remaining $27,200 was deferred and secured by five equal purchase-money notes maturing in each successive year and bearing interest at 6 per cent.

The Commissioner for 1920 and 1921 included in the taxpayer's gross income the face value of the notes received in connection with the sales of land made during those years.

It was stipulated that if only the cash payment received by the taxpayer in 1920 was to be considered in determining the taxable income for that year, the gross income from the sale of land for the year 1920 is $1,671.26, but if the total purchase price, including the deferred installments, is to be considered in determining taxable income, the amount of the gross income from the sale of land is $6,128.00.

It was also stipulated that if only the cash payments received by the taxpayer in 1921 were to be considered in determining taxable income, the gross income from the sales of land for the year 1921 is $8,444, but if the total purchase price, including the deferred installments, is to be considered in determining taxable income, the amount of gross income from the sale of land is $46,492.16.

None of the purchase-money notes were ever discounted. However, three of them were pledged as collateral in connection with a loan obtained by the taxpayer. In order for the taxpayer to get this loan, however, it was necessary to have its president endorse the note given by it in addition to pledging the collateral.

The Commissioner reduced the deductions taken for depreciation by $1,160.48 for 1920, and $1,099 for 1921, on the basis that the amounts deducted were excessive.

The returns filed by the taxpayer for the years 1917, 1918, and 1919, did not show any taxable income for those years.

The Commissioner reduced the taxpayer's invested capital for 1920 and 1921 by $256,889.26, claimed by it on account of alleged profits for prior years.

OPINION.

TRAMMELL: The questions involved in this appeal are: (1) How should the income from the sales of land during 1920 and 1921 be determined and what was the amount of income for each year; (2) what further deduction for depreciation than that allowed by the Commissioner is the taxpayer entitled to for 1920 and 1921; (3) should invested capital as determined by the Commissioner be increased by the amount of $256,889.26; and (4) should the total amount of income and profits taxes for 1920 be excluded in the computation of taxpayer's invested capital for 1921?

By section 1208 of the Revenue Act of 1926, the pertinent provisions of section 212 (d) of that Act are made applicable to sales of real estate made in the years 1920 and 1921.

Section 212 (d) reads as follows:

(d) Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed, bears to the total contract price. In the case (1) of a casual sale or other casual disposition of personal property for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this subdivision. As used in this subdivision the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

The regulations issued in pursuance to the authority granted by the Act are contained in Treasury Decision 3921. The pertinent portions of these regulations are:

### SALE OF REAL PROPERTY INVOLVING DEFERRED PAYMENTS.

Under section 212 (d) of the Revenue Act of 1926 deferred-payment sales of real property fall into two classes when considered with respect to the terms of sale, as follows:

(1) Sales of property on the installment plan; that is, sales in which the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable year in which the sale is made do not exceed one-fourth of the purchase price.

(2) Deferred-payment sales not on the installment plan; that is, sales in which the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable year in which the sale is made exceed one-fourth of the purchase price.

Sales falling within class (1) and class (2) alike include (a) agreements of purchase and sale which contemplate that a conveyance is not to be made at the outset, but only after all or a substantial portion of the purchase price has been paid, and (b) sales where there is an immediate transfer of title, the vendor being protected by a mortgage or other lien as to deferred payments.

### SALE OF REAL PROPERTY ON INSTALLMENT PLAN.

In transactions included in the first class of deferred-payment sales the vendor may return as income from such transactions in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the property is paid for bears to the total contract price.

In 1920 one sale was made. The purchase price was $8,800; the cash payment was $2,400, which was in excess of one-fourth of the purchase price. This sale, therefore, is not one on the installment plan as provided by statute, and the income therefrom may not be computed and returned on the installment basis.

In sales not on the installment plan the obligations of the purchaser received by the vendor are to be considered as the equivalent of cash to the amount of their fair market value. As no evidence was introduced to show the value of the notes received in connection with this sale, or the financial ability or standing of the maker, the determination of the Commissioner that they had a fair market value equal to their face value will not be disturbed. *Appeal of Aaron W. Wolfson*, 1 B. T. A. 538. Taxpayer's gross income from this sale, therefore, was $6,128.

Of the two sales made in 1921, one was for $36,800, of which $6,400 was a cash payment. The selling price of the other was $33,600, and a cash payment of $6,400 was made. Since the cash payment in each of these sales was less than one-fourth of the purchase price, the sales are to be regarded as on the installment plan, and the taxpayer may return as income from such sales that proportion of the cash payment received in 1921 which the total profit to be realized

79705°—28——8

when the property is paid for bears to the total sale price. The gross income in 1921 computed on this basis was $8,444.

Relative to the question of depreciation, the taxpayer contends that both of the disallowances were erroneous as a matter of law; that the Commissioner made the disallowances arbitrarily and not upon any claim that depreciation taken by the taxpayer was unreasonable. The question raised by the taxpayer is whether there is lawful authority for the disallowance of depreciation by the Commissioner on the theory pursued by him. This contention of the taxpayer is without merit. *Appeal of Atkins Lumber Co.*, 1 B. T. A. 317. The amount of the depreciation deduction is to be determined from all the facts in each case. When the Commissioner determines that the deduction should be less than the amount claimed by a taxpayer, then the taxpayer must introduce evidence to show that the action of the Commissioner is erroneous. This the taxpayer has not done in this case.

On the question of invested capital, the stipulation filed shows that the greater part of the selling price of farms sold in 1917, 1918, and 1919, was not paid and there is no evidence that the amount of $256,889.26, excluded from invested capital on account of alleged profits from the sales of those years, should be included therein. The determination of the Commissioner in that respect is, therefore, approved.

The remaining issue is in regard to the amount of income and profits taxes for 1920 and its relation to invested capital for 1921. The invested capital for 1921 should be adjusted by including therein the prorated amount of income and profits taxes for 1920 in accordance with section 1207 of the Revenue Act of 1926.

> *Judgment will be entered on 15 days' notice, under Rule 50.*